**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FITZGERALD MAYHAN, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

Case No.

TOMOCREDIT, INC.,

Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, FITZGERALD MAYHAN (hereinafter "Plaintiff"), brings this class action against TOMOCREDIT, INC. (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., (hereinafter the "TCPA"), and the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA"). In support, Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, resulting from Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff on Plaintiff's personal cellular telephone, thereby invading Plaintiff's privacy.

2. To promote and market its services, Defendant, directly or through persons on its behalf, routinely and systematically violates Fla. Stat. § 501.059 and 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out instructions and delivering telemarketing solicitations, advertisement and marketing text messages to residential and cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC").

3. Plaintiff and Class Members received unwanted spam telemarketing text messages from Defendant without regard to the FTSA, the TCPA, and for individual privacy. This lawsuit challenges all telemarketing text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and to Class Members from approximately July 2021, through the date of preliminary approval of class certification.

4. The FTSA and TCPA were designed to prevent telemarketing text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021).

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to Florida Statute § 501.059; Florida Statute § 26.012(2) and Florida Rule of Civil Procedure 1.220. The matter in

controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

6. Venue in this judicial district is proper under § 47.011, because a substantial part of the events or omissions giving rise to the claims in this case occurred in this county, including Defendant's transmission, either directly or through persons on its behalf, of the unlawful and unwanted calls to Plaintiff and other Class Members in this county, on their residential telephone numbers with Florida area codes – consumers with Florida area codes, including those who were registered with the National DNC Registry. Defendant's principal place of business and the marketing decisions related to the transmission of subject unauthorized telemarketing call advertisements in this county.

7. The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, solicits consumers to purchase its products and services in this state, and has availed itself to the jurisdiction of the State of Florida by authorizing and transmitting the subject unauthorized telemarketing call advertisements Class Members in this state.

8. Additionally, Defendant has previously been sued in a related action in the State of Florida for TCPA violations substantially like, if not identical to, the violations alleged by Plaintiff in this action. Defendant has submitted to the jurisdiction of this Court by invoking the Court's jurisdiction in its Notice of Removal filings in the related action, and by agreeing that venue for any suits arising out of or

relating to a prior agreement in the previously filed related action be the Middle District of Florida.

9. This action relates to the prior agreement and the previously filed related action because it involves Defendant's common practice of continuing to send telemarketing messages to those that have opt-ed out, and Defendant's failed opt-out system that is causing the violations.

## PARTIES

10. Plaintiff's domicile is in Orange County, Florida. Plaintiff is a citizen of the State of Florida.

11. Defendant is a limited liability company with its principal address located at 535 Mission Street, Floor 14, San Francisco, CA 94105. Defendant is a company which operates as a consumer credit card provider, and at all times relevant hereto a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

12. Defendant directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

13. Plaintiff's residential telephone number ending in 4926 has been on the National Do-Not-Call Registry since approximately August 6, 2022, and at all times relevant to this action. Plaintiff is the telephone subscriber for her telephone number.

14. Plaintiff's full telephone number will be provided directly to counsel for Defendant. It is not filed in this Complaint, a public document, to prevent further unwanted and unauthorized calls to Plaintiff.

15. The TCPA provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

16. Defendant utilizes mass spam telemarketing text messaging to send unsolicited text messages, marketing and advertising Defendant's services.

**Defendant's Telemarketing to Plaintiff.**

17. Defendant sent Plaintiff at least 10 telemarketing messages since October 27, 2023, including on:

*** THIS SECTION INTENTIALLY LEFT BLANK ***

October 27, 2023




October 30, 2023



November 29, 2023 & December 13, 2023




December 31, 2023 (2x)



<u>January 3, 2024</u>




<u>April 28, 2025</u>



June 14, 2025 & June 18, 2025




18. Plaintiff continued to receive text messages from or on behalf of Defendant after communicating to Defendant that he did not wish to receive text messages by replying to the messages with "stop."

19. Plaintiff received at least 9 telemarketing messages after replying "stop."

20. Because Defendant continued to text Plaintiff after he replied "stop," Plaintiff e-mailed Defendant's help desk at help@tomocredit.com to provide Defendant notice of the continued violations and to get Defendant to stop.

21. On November 7, 2023, Defendant wrote Plaintiff acknowledging receipt of Plaintiff's notice of the violations, that Plaintiff was not interested in Defendant's services, and stating that Plaintiff would not receive any further communications:

**Stephanie** (TomoBoost)

Hello,

Thank you for contacting Tomo support.

You will be excluded from further communications from us. Should you wish to reconsider TomoBoost or TomoCredit, please email us

Support @ Tomo
+1 (866) 432-7695
www.tomocredit.com

22. Despite Plaintiff's written notice of the violations, and Defendant stating, "you will be excluded from further communications from us," Defendant continued to send at least 8 additional telemarketing messages to Plaintiff.

23. Plaintiff received telemarketing messages after replying "stop," and after Defendant was on notice of its failed opt-out system, including its failure to recognize "Stop" requests, and/or failure to remove/scrub numbers from its telemarking lists who have opted out or should have been placed on Defendant's internal DNC list, and those on the national DNC registry for whom Defendant did not maintain express written consent.

24. The text messages that Defendant made or knowingly allowed a third party to make on its behalf constitute "telephonic sales calls" because they advertise promotions for Defendant's services and are sent for the purpose of "soliciting a sale of [] consumer goods or services . . ." within the meaning of Fla. Stat. § 501.059(1)(j).

25. The telephone number Defendant texted is a "Called Party" as defined by § 501.059(1)(a).

26. Defendant did not maintain prior express written consent to authorize the subject telemarketing text messages at issue in this action.

27. Indeed, prior to making (or knowingly allowing a third party to make on its behalf) the subject telemarketing text messages Defendant lacked a signed written agreement with Plaintiff that complies with the requirements of the TCPA and Fla. Stat. § 501.059(1)(g).

28. Defendant was or should have been aware that it was unlawfully transmitting telemarketing text messages to Plaintiff and other consumers without maintaining prior express consent or prior express written consent to telephone numbers on the DNC Registry.

29. Because of the continued violations despite Plaintiff clear revocation of any alleged prior consent, Plaintiff is entitled to an enforceable injunctive order from the Court to stop the on-going violations.

30. Because Defendant continued to contact Plaintiff despite his STOP request, his e-mailed notification to Defendant, and Defendant stating that Plaintiff would no longer be contacted, it constitutes willful and/or knowing violations entitling Plaintiff to tremble damages.

31. Additionally, because Defendant already knew from the previously filed related action that its opt-out system failed to remove or scrub numbers of persons who requested to no longer be contacted, it further demonstrates willful and/or knowing violations entitling Plaintiff to tremble damages.

32. Through the unsolicited telemarketing, Defendant contacted Plaintiff many times on Plaintiff's cellular telephone regarding an unsolicited service via an "automated system for the selection and dialing of numbers," as defined by §501.059(8)(a).

33. Upon information and belief, the selection and dialing of numbers for the texts at issue are done using an automated system because the texts were sent from telephone numbers used to message consumers en masse; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making calls/texts without manually dialing the recipients numbers; and because the hardware and software used by Defendant to send such calls/texts have the capacity to both select numbers to be dialed and to dial such numbers in an automated fashion based on predetermined, programmed, or random criteria or settings.

34. Because Defendant continued to text Plaintiff despite Plaintiff texting "stop," and stating that Plaintiff would be excluded from further communications, it demonstrates that an automated system was used to select and dial Plaintiff's number and autogenerate messages, that Defendant failed to have in place or implement an adequate DNC system and procedures, Defendant's failure to ensure that adequate procedures and safeguards were in place to honor opt-out requests, and/or that Defendant willfully continued to call Plaintiff despite his express revocation of any conceivable consent.

35. Indeed, if a human had seen Plaintiff's STOP messages and/or his number on Defendant's do-not-call list, Defendant would not have continued to text Plaintiff, demonstrating the use of an automated system. If a human did see Plaintiff's STOP messages and/or his number on Defendant's do-not-call list, yet still manually continued text Plaintiff's number regardless, it demonstrates willful misconduct and a knowing violation of the telemarketing laws designed to protect to all United States consumers.

36. Defendant not only fails to honor internal DNC requests, it also fails to scrub numbers against the national DNC registry before placing telemarketing text messages.

37. Defendant's automated system selects and dials numbers from a lead list of numbers to be dialed without regard to whether those numbers have been placed, or should have been placed, on Defendant's internal DNC list or on the national DNC list. If it was not automated, human intervention would have prevented the texts from being placed to a number that continued to text STOP and that was on the national DNC list.

38. All the telemarking messages made by Defendant to Plaintiff and Class Members were telephonic sales calls sent for the purpose of promoting Defendant's consumer goods or services and business and offers regarding consumer credit related services.

39. The only reason Defendant placed texts to Plaintiff and Class Members is for the purpose of making telephonic sales calls to promote Defendant's consumer goods or services and business.

40. Defendant's failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

41. To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA and/or FTSA.

42. Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

43. Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

44. Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

45. Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

46. Defendant knowingly accepted the marketing benefits of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

47. Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

48. Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

49. Compliance with the FTSA will not result in Defendant having to cease its business operations.

50. Compliance with the FTSA will not result in Defendant having to alter the prices of goods or services it provides in the marketplace.

51. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

52. Because Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

53. Plaintiff is the subscriber or customary user of his cellular telephone number that Defendant texted and is financially responsible for the phone service,

including the cellular costs and data usage incurred as a result of the texts made to Plaintiff by Defendant.

54. The telemarketing text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls.

55. Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

56. For example, apart from forcing Plaintiff to spend time communicating with Defendant and investing time researching and hiring counsel, Plaintiff received some of the unsolicited telemarketing text messages while he was working, and sometimes while spending time with family or trying sleep. This caused Plaintiff on multiple occasions to stop to check his phone and waste time reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

57. The calls are a disruptive nuisance. *See Drazen v. GoDaddy.com, LLC,* No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted,

illegal text message suffers a concrete injury"); *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

58. Because Plaintiff and Class Members continued to received telemarketing texts from Defendant after they texted "stop" revoking any conceivable consent, demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this class action under Rules 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure, on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **DNC Class: All persons within the United States who (1) were sent at least two text message by or on behalf of Defendant (2) within a 12-month period from or on behalf of Defendant within the four years prior to the filing of this Complaint; (3) and such person had previously included their number on the National Do Not Call Registry at least 31 days prior to receiving the first text message from Defendant; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**
>
> **Internal DNC Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or**

**on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages.**

**<u>FTSA Internal DNC Class</u>: All persons within the State of Florida who received any text message from or on behalf of Defendant at least 15 days *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with "stop" or similar opt-out instruction between July 1, 2021, to the date of Class Notice using the same equipment or type of equipment utilized to text Plaintiff.**

60. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

61. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend, expand, or narrow the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

62. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit

the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

63. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's texting logs and marketing records.

64. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

65. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a. Whether Defendant initiated telemarketing text messages sent to Plaintiff and Class members;

b. Whether Defendant initiated telephonic sales calls Plaintiff and Class members

c. Whether Defendant or its agents sent the texts messages using any automated system to any telephone number assigned to a cellular phone service;

d. How Defendant obtained the numbers of Plaintiff and Class members;

e. Whether Defendant can meet its burden of showing that it had prior express written consent to send such texts;

f. Whether texts messages placed to Plaintiff and Class Members violate the Florida Telephone Solicitation Act, Florida Statute §501.059 and its regulations;

g. Whether Defendant willfully or knowingly violated Fla. Stat. § 501.059 and its regulations;

h. Whether Defendant willfully or knowingly violated 47 C.F.R § 64.1200(d);

i. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

j. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

k. Whether Plaintiff and the Class are entitled to any other relief.

66. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 1.220(b)(3).

67. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the violates the FTSA and TCPA.

68. Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

69. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in TCPA litigation and class action litigation.

70. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress

for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

71. **Class-Wide Injunctive Relief:** Moreover, class certification is warranted under Rule 1.220(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the FTSA and TCPA, and to order Defendant to provide notice to them of their rights under the FTSA and TCPA to statutory damages and to be free from unwanted text messages.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(c)

## (On behalf of Plaintiff and the DNC Class)

72. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 71 of this Complaint as if set forth verbatim herein.

73. The TCPA provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

74. 47 C.F.R. § 64.1200(e), further provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

75. Both calls and texts to numbers on the DNC registry violate the TCPA. *See* 47 C.F.R. § 1200(c)(2).

76. Wireless phone subscribers have always been able to add their personal wireless phone numbers to the national Do-Not-Call list.[1]

77. Any "person who has received more than one telephone call within any 12-monthperiod by or on behalf of the same entity in violation of the regulations

[1]. *See* Federal Communications Commission, Wireless Phones and the National Do-Not-Call List, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list#:~:text=Placing%20telemarketing%20calls%20to%20wireless,been%20%2D%20illegal%20in%20most%20cases. (Last visited July 14, 2025).

prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

78. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the Do-Not-Call Registry Class members who registered their respective telephone numbers on the National Do-Not-Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

79. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount in statutory damages for each willful violation recoverable by members of the Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(d)**
**(On behalf of Plaintiff and the Internal DNC Class)**

80. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 71 of this Complaint as if set forth verbatim herein.

81. 47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. . .

> (6) *Maintenance of do-not-call lists*. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

82. Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

83. Plaintiff and others Internal DNC Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

84. Defendant failed to honor Plaintiff's and the Internal DNC Class members opt-out requests.

85. Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

86. Pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT III**
**VIOLATIONS OF FLORIDA STATUTE § 501.059**
**(On behalf of Plaintiff and the FTSA Internal DNC Class)**

87. Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 71 of this Complaint as if set forth verbatim herein.

88. It is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

89. Plaintiff and the FTSA Class Members made requests to Defendant not to receive spam telemarketing text messages from Defendant.

90. Defendant failed to honor Plaintiff's and the FTSA Class Members opt-out requests.

91. In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Class members, at least 15 days after they had previously communicated to Defendant that they did not wish to receive any text messages from Defendant.

92. Plaintiff received at least 8 telemarketing text messages from Defendant more than 15 days after he texted "STOP," revoking any conceivable consent.

93. In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Class members, at

least 15 days after they had previously communicated to Defendant that they did not wish to receive any text messages from Defendant.

94. Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

95. Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

96. Plaintiff and the FTSA Class members will suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

97. The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

98. The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

99. Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure *and maintain* prior express written consent before engaging in any text message solicitations, to honor opt-out requests, and to follow such consent requirements.

100. Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

101. As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059 (10)(a), Plaintiff and the FTSA Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the Class(es), prays for the following relief:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. An order declaring that Defendant's actions, as set out above, violate the FTSA, and TCPA and its implementing regulations;

c. Statutory damages of $500 per text message, for each FTSA and TCPA violation;

d. Willful damages at $1,500 per text message, for each FTSA and TCPA violation;

e. An injunction prohibiting Defendant from texting numbers assigned to the DNC Registry without the prior express written consent of the called

party, and prohibiting Defendant from contacting individuals who have requested to no longer be contacted;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

Daated: July 16, 2025

Respectfully submitted,

*/s/ Joshua Eggnatz*
Joshua H. Eggnatz
Florida Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com

*Lead Counsel for Plaintiff and Putative Class*